**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ERIC EVANS**, on behalf of himself and others similarly situated, | : | |
| | : | **CASE NO.** |
| Plaintiff, | : | |
| v. | : | **<u>JURY TRIAL DEMANDED</u>** |
| **NOVELIS CORPORATION**<br>c/o Corporation Service Company<br>2 Sun Court, Suite 400<br>Peachtree Corners, GA 30092 | : | FLSA Collective Action |
| Defendant. | : | |

**<u>PLAINTIFF'S COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT</u>**

Named Plaintiff Eric Evans, individually and on behalf of others similarly situated, files his Collective Action Complaint against Defendant Novelis Corporation for its failure to pay its employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Named Plaintiff's FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the FLSA.

2. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant conducts significant business in this District, maintains its corporate headquarters in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II. PARTIES

### A. Named Plaintiff

3. Named Plaintiff is an individual, a United States citizen, and a resident of Kentucky.

4. Named Plaintiff worked for Defendant at its facility in Guthrie, Kentucky, as an hourly, non-exempt employee as defined in the FLSA in the role of Casting Operator from July 2024 to November 2025.

5. At all relevant times, Named Plaintiff primarily performed non-exempt duties for Defendant in furtherance of its business of producing and distributing aluminum and aluminum products.

6. During his employment, Named Plaintiff worked 40 or more hours in one or more workweek(s).

7. Named Plaintiff brings this action on behalf of himself and other similarly situated employees and has given his written consent to bring this action to collect unpaid overtime compensation under the FLSA. Named Plaintiff's consent is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b). *Consent to be Party Plaintiff* is attached hereto as **Exhibit A**.

8. In addition to Named Plaintiff, numerous other individuals have given their consent to join this Action as opt-in plaintiffs. Consent forms for Akeem Redd, Brad Stewart, Brandon Bonilla, Decorey Reid, Keon Farley, Lori Randolph, Mackenzie Fairchild, and Stancil Prather ("Opt-In Plaintiffs")[1] are attached hereto as **Exhibit B**.

**B. <u>Defendant</u>**

9. Defendant is a foreign corporation that is registered to conduct business in Georgia.

10. Defendant is a manufacturer and distributor of aluminum and aluminum products.[2]

---

[1] The Opt-In Plaintiffs are several of the other similarly situated production/manufacturing employees Named Plaintiff seeks to represent and are included in the FLSA Collective as defined herein. Whenever an allegation references "similarly situated employees" or "similarly situated production/manufacturing employees," this includes Opt-In Plaintiffs as well as other employees who have yet to file consent forms to join this case.

[2] *About Us*, NOVELIS, https://novelis.com/about-us/ (last visited Aug. 6, 2026).

11. Defendant currently owns, operates, and/or manages sixteen facilities across the United States.[3]

12. At all relevant times, Defendant has been an "employer" as the FLSA defines that term due to its employment of Named Plaintiff and those similarly situated as described herein.

13. At all relevant times, Defendant has had the authority to hire and fire employees, supervise and control employees' work schedules and conditions, determine the rate and method of employees' pay, and/or maintain employees' employment records.

14. At all relevant times, Defendant has determined the essential terms and conditions of employment for Named Plaintiff and similarly situated employees.

15. At all relevant times, Defendant has had control and authority over Named Plaintiff's and similarly situated employees' working conditions. At all relevant times, Defendant exercised that authority and control over Named Plaintiff and similarly situated employees.

16. At all relevant times, Defendant suffered or permitted Named Plaintiff and other similarly situated employees to work. The work performed by Named

[3] *Locations*, NOVELIS, https://novelis.com/locations/ (last visited Aug. 6, 2026).

Plaintiff and similarly situated employees benefited Defendant and directly or indirectly furthered its interests.

17. Because the work performed by Named Plaintiff and all other similarly situated employees benefited Defendant and directly or indirectly furthered its interests, Defendant is the employer of Named Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

18. Upon information and belief, Defendant applies or causes substantially the same employment policies, practices, and procedures to be applied to its employees at all of Defendant's locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

19. At all relevant times, Defendant, as a corporate entity producing and distributing steel and metal products, was an enterprise engaged in "commerce or in the production of goods for commerce" because it had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

20. At all relevant times, Defendant has had annual gross volumes of sales made, or business done, of not less than $500,000 each year.

21. Upon information and belief, at all relevant times, Defendant was fully aware that it was legally required to comply with the wage and overtime laws of the United States.

## III. FACTS

22. Named Plaintiff and other similarly situated production/manufacturing employees worked 40 or more hours in one or more workweek(s) during the three years immediately preceding the filing of this Complaint.

23. During their employment with Defendant, Named Plaintiff and other similarly situated production/manufacturing employees were involved in the production and distribution of aluminum and aluminum products. This type of work is considered high-hazard industrial work, with various attendant safety risks including, but not limited to, crush injuries, burn injuries, impact injuries, and laceration injuries. Due to these hazards, Defendant required Named Plaintiff and other similarly situated production/manufacturing employees to comply with strict safety protocols at work as a condition of performing their job duties.

24. Specifically, Defendant required that Named Plaintiff and other similarly situated hourly production/manufacturing employees change into their uniforms and mandatory personal protective equipment ("PPE") before the start of their scheduled shifts. The PPE included a hard hat, safety glasses, steel-toed fire-

resistant boots, gloves, and other items. Defendant provided Named Plaintiff and other similarly situated hourly production/manufacturing employees an onsite area for them to store their uniforms/PPE and to change into and out of them.

25. The uniform/PPE that Defendant required Named Plaintiff and other similarly situated hourly production/manufacturing employees to wear is standard, necessary, and widely required throughout the aluminum and metal processing industry to prevent crushing, impact, laceration, and burn injuries, among other things. The use of such personal protective equipment in operations like Defendant's is consistent with, and in material respects required by, generally applicable workplace-safety standards governing personal protective equipment.

26. Requiring Named Plaintiff and other similarly situated hourly production/manufacturing employees to wear uniforms/PPE primarily benefited Defendant. The uniform/PPE enabled Defendant to operate its hazardous aluminum-processing and production/manufacturing operations, protected Defendant's workforce and equipment, and reduced workplace injuries, lost time, and Defendant's exposure to liability, while helping Defendant meet the workplace-safety standards governing its operations.

27. Donning their PPE is Named Plaintiff's, and other similarly situated hourly production/manufacturing employees' first integral and indispensable job

duty of the day, as they are working under dangerous conditions; donning PPE is inextricably intertwined with their job duties.

28. After donning their mandatory uniform/PPE, Named Plaintiff and other similarly situated hourly production/manufacturing employees immediately engaged in other pre-shift duties, including walking to their assigned work areas, engaging in a shift change/shift turnover procedure with their outbound coworker, and beginning their principal work duties.

29. During the shift change/shift turnover procedure, Named Plaintiff and other similarly situated hourly production/manufacturing employees would discuss, among other things, (1) the status of the production and any work-related or safety issues or problems that arose during the prior shift and/or that might arise during the current shift, and/or (2) directions and instructions about work to be performed during the current shift.

30. The mandatory shift change/shift turnover procedure were integral and indispensable to Named Plaintiff's and other similarly situated production/manufacturing employees' job duties and were primarily for Defendant's benefit. Given the environment in which they work(ed), the mandatory shift change/shift turnover procedure were required to ensure the efficient and safe transition of production/manufacturing duties from one shift to the next and were

therefore inextricably intertwined with Named Plaintiff's and other similarly situated production/manufacturing employees' job duties. Named Plaintiff and other similarly situated production/manufacturing employees could not properly perform their work duties without participating in the mandatory shift change/shift turnover procedure.

31. Even though this donning and other pre-shift work occurred before the scheduled start of their shifts, Named Plaintiff and other similarly situated hourly production/manufacturing employees were not paid for this work time.

32. Instead, Defendant generally paid Named Plaintiff and other similarly situated hourly production/manufacturing employees for their scheduled shift times.

33. Accordingly, Defendant failed to compensate Named Plaintiff and other similarly situated hourly production/manufacturing employees for all hours worked, which resulted in overtime in weeks in which they worked 40 or more hours.

34. Defendant's policies described herein resulted in unpaid overtime for Named Plaintiff and other similarly situated production/manufacturing employees.

35. During relevant times, Defendant knew of and acted willfully regarding its conduct described herein. Defendant knew that Named Plaintiff and others similarly situated worked overtime without compensation for all overtime hours worked.

36. The FLSA requires Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

37. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

38. Defendant failed to track, keep, and/or transmit the hours accurately worked each day by Named Plaintiff and other similarly situated production/manufacturing employees.

39. Defendant willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed. The incorrect and/or incomplete records had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff and other similarly situated production/manufacturing employees.

40. Thus, Defendant willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

41. Upon information and belief, Defendant applied these same policies to all its hourly, non-exempt production/manufacturing employees at all its locations.

42. As a result of Defendant's companywide policy and/or practice described herein, Defendant knew or had reason to know that it was not compensating Named Plaintiff and other similarly situated production/manufacturing employees for all overtime hours worked.

43. Defendant is in possession and control of the necessary documents and information from which Named Plaintiff would be able to calculate damages, and/or Defendant otherwise failed to keep such records.

## IV. FLSA COLLECTIVE ALLEGATIONS

44. Named Plaintiff brings his FLSA overtime claims pursuant to 29 U.S.C. § 216(b) as a representative action for himself and all other similarly situated production/manufacturing employees of the opt-in collective. The FLSA collective consists of the following:

> **All current and former hourly, non-exempt production/manufacturing employees at all of Defendant's locations outside of Ohio who were paid for 40 or more hours of work in any workweek beginning three years before the filing date of this**

**Complaint (hereinafter the "FLSA Collective" or "FLSA Collective Members").**[4]

45. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA, liquidated damages, and attorneys' fees.

46. In addition to Named Plaintiff, the FLSA Collective Members have been denied proper overtime compensation due to the companywide time and pay policies and/or practices described herein. Defendant failed to meet the minimum requirements of the FLSA by not paying Named Plaintiff and the FLSA Collective Members overtime wages for all overtime hours worked. Named Plaintiff is representative of those other similarly situated production/manufacturing employees and is acting on behalf of their interests as well as his own in bringing this action.

47. The identities of the FLSA Collective Members are known to Defendant and are readily identifiable through Defendant's records. These individuals may readily be notified of this action and allowed to opt in to it pursuant to 29 U.S.C. § 216(b) for the collective adjudication of their claims for overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

---

[4] Named Plaintiff reserves the right to amend his definition of whom he seeks to send Court-authorized notice of this action to upon further investigation and discovery.

48. The net effect of Defendant's policies and practices is that Defendant willfully failed to fully and properly pay Named Plaintiff and the FLSA Collective Members overtime wages. Thus, Defendant enjoyed substantial ill-gained profits at the expense of Named Plaintiff and the FLSA Collective Members.

## V. CAUSE OF ACTION

### COUNT I:
### FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

49. Paragraphs 1 through 48 are incorporated by reference.

50. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and the FLSA Collective.

51. The FLSA requires that employees receive overtime compensation at a rate of 1.5 times their regular rate of pay for hours worked over 40 per workweek. 29 U.S.C. § 207(a)(1).

52. During the three years preceding the filing of the Complaint, Defendant employed Named Plaintiff and the FLSA Collective Members.

53. Named Plaintiff and the FLSA Collective Members regularly worked more than 40 hours in workweeks.

54. Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to compensate them for overtime wages for all hours worked over 40 hours in a workweek because of Defendant's policies and/or

practices described herein.

55. Defendant also violated the FLSA by failing to maintain and preserve payroll or other records containing, among other things, the hours worked each workday, and the total hours worked each workweek. *See* 29 C.F.R. §§ 516.2, *et seq*.

56. Named Plaintiff and the FLSA Collective Members were not exempt from receiving FLSA overtime compensation.

57. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members were entitled.

58. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

59. As a direct and proximate result of Defendant's conduct, Named Plaintiff and the FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, liquidated

damages, interest, attorneys' fees, and all other remedies available on behalf of himself and the FLSA Collective Members.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A. Directing Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, remuneration, timekeeping, and related records of the FLSA Collective Members;

B. Directing Defendant to provide all contact information, including but not limited to names, dates of employment, mailing addresses, telephone numbers, and email addresses of the FLSA Collective Members;

C. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Members, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

D. Tolling the statute of limitations for all members of the FLSA Collective from the date on which this matter was initially filed until the date on which they file consent to join forms;

E. Finding that Defendant failed to keep accurate records and that, as a result, Named Plaintiff and the FLSA Collective are entitled to prove their hours worked with reasonable estimates;

F. Awarding to Named Plaintiff and the FLSA Collective Members who join this case unpaid overtime wages to be determined at trial, together with any liquidated damages allowed by the FLSA;

G. Awarding to Named Plaintiff and the FLSA Collective Members who join this case costs, disbursements, and reasonable allowances for fees of counsel and experts, as well as reimbursement of expenses;

H. Awarding to Named Plaintiff and the FLSA Collective Members who join this case such other and further relief as the Court deems just and proper;

I. Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

J. Rendering judgment against Defendant for all damages, relief, or any other recovery whatsoever.

## JURY DEMAND

Named Plaintiff requests a trial by a jury on all Counts.

Respectfully submitted this 10th day of August 2026,

/s/ C. RYAN MORGAN
C. Ryan Morgan, Esq.
Georgia Bar No. 711884
Morgan & Morgan, P.A.
20 N. Orange Ave, 15th Floor
Orlando, FL 32801
Tel: (407) 420-1414
E-mail: RMorgan@forthepeople.com

/s/ JEREMY STEPHENS
Jeremy Stephens, Esq.
GA Bar No.: 702063
Morgan & Morgan, P.A.
191 Peachtree Street, N.E., Ste 4200
Post Office Box 57007
Atlanta, Georgia 30343-1007
Tel: (404) 495-1682
E-mail: jstephens@forthepeople.com

Matthew J.P. Coffman (OH Bar 0085586)*
Shannon M. Draher (OH Bar 0074304)*
Adam C. Gedling (OH Bar 0085256)*
Tristan T. Akers (OH Bar 0102298)*
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
sdraher@mcoffmanlegal.com
agedling@mcoffmanlegal.com
takers@mcoffmanlegal.com

* *Pro hac vice applications forthcoming*

*Attorneys for Named Plaintiff and those similarly situated*